IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CASE NO. 2:25-CR-253-RAH-KFP |
| | ) |
| JEMARION FE'QON LAUSANE | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the Court on Defendant's Motion to Suppress, as amended (Docs. 33, 34), the response filed by the United States (Doc. 37), and Defendant's reply in support of the motion (Doc. 39). Upon consideration of the record, the undersigned finds that Defendant is not entitled to a *Franks* hearing and recommends the motion be DENIED.

**I.   BACKGROUND**

Defendant's motion seeks suppression of evidence obtained pursuant to (or fruits resulting from) a search warrant executed at his home. He asserts that the affidavit in support of the warrant was insufficient to establish probable cause because it omitted information about the prior law enforcement investigation of Maceo Edwards and because it contained false or misleading information about law enforcement's surveillance of his home. Defendant further argues he is entitled to a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 165 (1978).

The affidavit supporting the challenged search warrant is summarized as follows:

- An anonymous tipster made a drug complaint to law enforcement on February 6, 2025.

- The tipster reported drug activity at Defendant's home.

- "Agents began conducting surveillance of the residence and observed several vehicles that drove up to the residence and would stay a short time and leave. This is consistent with narcotics transactions."

- Agents observed a vehicle drive up to the residence, stay a short period of time, and leave. Agents then conducted a traffic stop of the vehicle, during which they located approximately a quarter pound of marijuana.

- On April 3, 2025, at approximately 4:00 p.m., agents conducted surveillance of Defendant's home, during which they observed a black Chevrolet Malibu with tag ELMACEO parked at the home along with other vehicles.

- At approximately 4:37 p.m., the ELMACEO vehicle left the home, and a traffic stop was conducted due to a window tint violation. Based on the odor of marijuana, the vehicle was searched.

- The ELMACEO vehicle search revealed "a backpack containing marijuana, marijuana behind the driver's seat in the seat pocket, and . . . approximately thirty Machine Gun Conversion Devices[,] which consisted of approximately fifteen 'Glock switches' and fifteen 'drop-In auto sears' in a door dash bag behind the passenger seat in rear seat pocket. The 'Swit[c]hes' were 3D printed. A red handled firearm was also located under the passenger seat that had a 'Glock Switch' installed on it."

- Law enforcement responded back to Defendant's home "and had all the individuals exit the residence due to the vehicle being observed leaving [t]he residence. [Law enforcement] cleared the residence for officer safety and observed a bag of marijuana lying on a bed in plain view [i]n one of the bedrooms."

*See* Docs. 34-2; 37-1. The warrant authorized the search of Defendant's residence, all outbuildings and vehicles on the property, including a specifically identified Yukon "that [Defendant] was seen exiting when Agents arrived." Doc. 37-1 at 6.

Defendant asserts that he left his home in a borrowed Yukon vehicle to check on his cousin at a traffic stop. Although not discussed in the search warrant, the parties agree that on April 3, 2025, a second traffic stop was made on another vehicle leaving the residence.

Defendant asserts that the driver was his cousin. During the stop, officers found in that vehicle marijuana and a firearm. Doc. 37 at 2; Doc. 39 at 2; *see also* Doc. 39-1 at 2–3.[1] After checking on his cousin, Defendant returned to his home. Doc. 39 at 2. When law enforcement returned to the home after the ELMACEO stop, they encountered Defendant in front of the home at the Yukon he had driven to his cousin's traffic stop. Defendant was detained and the home was cleared while the search warrant was secured.

According to the Government, during the search of the residence and vehicles contained within the curtilage, law enforcement recovered the marijuana they had seen in plain view during the home's clearing and located vacuum seal bags, three firearms, along with a pound of marijuana in the Yukon. During a *Mirandized* statement, the Government asserts that Defendant acknowledged selling marijuana and ownership of one of the firearms.[2] Doc. 37 at 3. Defendant is not a person prohibited from possessing a firearm.

Defendant is charged by indictment with one count of Possession with Intent to Distribute a Controlled Substance and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

---

[1] The driver, Defendant's cousin, was released.
[2] In passing, Defendant asserts that he never possessed the marijuana law enforcement found in the Yukon where Defendant first encountered law enforcement on April 3 after he had driven the Yukon to check on the traffic stop involving his cousin. He says the vehicle was not his and argues he "is charged with marijuana he never even possessed found in a vehicle that was clearly not his, and having this same marijuana around a legal firearm where he allegedly tried to further the promotion of trafficking drugs he never possessed." Doc. 34 at 3. Defendant's passing assertion of these points of contention appear related to the sufficiency of the evidence against Defendant for the charged offenses and not to the *Franks* question regarding the suppression motion before the Court.

## II.    APPLICALBE LEGAL STANDARD

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. A search warrant must be supported by an affidavit containing information that "is believed or appropriately accepted by the affiant as true." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). In the context of a motion to suppress, a *Franks* hearing is an evidentiary hearing held to determine the veracity of a search warrant affidavit. *See Franks*, 438 U.S. at 155–56 (reasoning that "the Fourth Amendment requires that a hearing be held in the defendant's request" if a warrant is obtained by using a false statement made intentionally or recklessly).

Search warrants and their affidavits are entitled to a presumption of validity. *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012). To challenge a search warrant affidavit under *Franks*, the defendant must (1) "make[] a substantial preliminary showing" that the affiant "knowingly and intentionally, or with reckless disregard for the truth," included false statements in the warrant affidavit; and (2) "the allegedly false statement [was] necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56; *see also United States v. Goldstein*, 989 F.3d 1178, 1197 (11th Cir. 2021); *United States v. Railey*, 481 Fed. App'x 545, 547 (11th Cir. 2012) (per curiam) (holding that, "[u]nder the Fourth Amendment, a '*Franks*' hearing must be held" when these requirements are satisfied).[3]

---

[3] Here, and elsewhere in this Recommendation, the Court cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

4

Only a showing on both prongs warrants an evidentiary hearing under *Franks*. *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (per curiam) (citing *Franks*, 438 U.S. at 155–56). And only "if inclusion of the omitted facts would have prevented a finding of probable cause" will the reckless or intentional omission of facts invalidate a warrant. *Lebowitz*, 676 F.3d at 1010 (quoting *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009)); *see also Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997) (holding that "[t]he reasoning in *Franks* also applies to information omitted from warrant affidavits"). Negligent omissions or omissions that are insignificant and immaterial will not invalidate a warrant. *United States v. Taylor*, 2021 WL 7209524, at *8 (M.D. Ala. Sept. 13, 2021) (citing *United States v. Reid*, 69 F.3d 1109, 1114 (11th Cir. 1995)), *report and recommendation adopted*, No. 2:20-CR-222-ECM, 2022 WL 610170 (M.D. Ala. Mar. 1, 2022). It is the defendant's burden to show that, "absent [the] misrepresentations or omissions, probable cause would have been lacking." *United States v. Novaton*, 271 F.3d 968, 987 (11th Cir. 2001). If probable cause remains regardless of the inclusion of omitted information and the exclusion of misleading or false information, then no hearing is required. *Kapordelis*, 569 F.3d at 1309–10.

**III.   DISCUSSION**

Defendant argues that the search warrant is faulty and could not have supported probable cause because it omitted the fact that Maceo Edwards was known to law enforcement based on a 2023 investigation of machinegun conversion devices (MCD), and his vehicle with the ELMACEO tag was also known to law enforcement. Defendant also

5

argues that law enforcement's surveillance of Defendant's home from the time of the tip on February 6, 2025, until the day of the search warrant on April 3, 2025, revealed no suspicious activity, but this fact was not disclosed in the search warrant affidavit. Based on this information, Defendant argues law enforcement made material and reckless misrepresentations and omissions of the facts when presenting the search warrant to the circuit court judge. *See* Doc. 34 at 8.

For the reasons explained below, the undersigned finds Defendant failed to satisfy his burden to be entitled to a *Franks* evidentiary hearing.

## Defendant is not Entitled to a *Franks* Hearing

Here, Defendant has offered law enforcement's April 8 investigation report (Doc. 39-1 at p. 2) and the challenged April 3 search warrant (Doc. 34-2) to support his argument that material information was omitted or misrepresented regarding the surveillance at Defendant's home. In support of his assertion of misrepresentations, Defendant argues the search warrant "proclaims agents while conducting their surveillance witnessed high traffic coming to and from the residence which is usually indicative of narcotics trafficking" but the report indicates no suspicious activity during surveillance. Doc. 39 at 3. He also argues that the Maceo Edwards investigation was material and omitted.

### A.   Preliminary showing for first prong of the *Franks* analysis

Special Agent Eric Tucker prepared the April 8 investigative report, which provides the following statement regarding surveillance following the tip on February 6, 2025: "Agents drove by the residence several times *but did not observe any activity*." Doc. 39-1 at 2 (emphasis added).

In contrast, the search warrant affidavit, signed by Agent Tucker, provides the following:

> On February 6, 2025, the Alabama Law Enforcement Agency . . . . received a drug complaint on [Defendant's address]. Agents began conducting surveillance of the residence and *observed several vehicles that drove up to the residence and would stay a short time and leave. This is consistent with narcotics transactions*."

Doc. 34-2 at 4 (emphasis added). The affidavit also provides that law enforcement observed a specified vehicle "drive up to the residence stay a short period of time and leave. Agents conducted a traffic stop of the vehicle and located approximately a quarter pound of marijuana." Doc. 37-1 at 4. The date of this observation, however, is not mentioned.

An affiant makes a false statement with a "'reckless disregard for the truth' where he "should have recognized the error, or at least harbored serious doubts" about the truth of the statement made. *United States v. Kirk*, 781 F.2d 1498, 1503 (11th Cir. 1986). Comparing the investigation report of no activity (over an unspecified time) with the search warrant language of narcotics transaction activity suggests that the surveillance facts and timeline were relayed in the search warrant in a manner that was erroneous or doubtful, which should have been recognized by the affiant. For purposes of continuing the analysis, the undersigned assumes without deciding that the comparison of the warrant and the report *minimally* meets the first prong of *Franks* to make a substantial showing that the affiant,[4]

---

[4] The required "substantial preliminary showing" under *Franks* "must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *United States v. Arbolaez*, 450 F.3d 1283, 1294 (11th Cir. 2006) (per curiam) (quoting *Williams v. Brown*, 609 F.2d 216, 219 (5th Cir. 1979)). Defendant's showing might not satisfy this standard. First, Defendant's motion is full of unsupported assertions that the search warrant contained "material and reckless misstatements and omissions[,]" and Defendant did not come forward with the investigative report until his reply brief. *See* Docs 34; 39. Second, the investigative report, although

here Agent Tucker, "knowingly and intentionally, or with reckless disregard for the truth" included a false or misleading statement in the search warrant about surveillance that was conducted after February 6 and before April 3.

Defendant also argues that the search warrant "failed to truthfully submit to the Circuit Court Judge that Mr. Maceo Edwards with the infamous Black Malibu bearing the tag, ELMACEO had been under investigation for roughly two years for the manufacturing and distribution of [machinegun] conversion devices." Doc. 34 at 5. Defendant fails to support this assertion with any sworn evidence, but the Court takes notice of the detention hearing transcript in this case wherein law enforcement's testimony affirms that Edwards was previously investigated in relation to machinegun conversion devices in 2023. Doc. 13 at 7:5–23. Again, assuming this is also a sufficient showing as to the omission under *Franks*, the undersigned moves on to the next part of the analysis.

As explained below, when the *Franks* analysis is continued here by including the omitted Edwards information and excluding the misleading or false surveillance information, the search warrant is still supported by probable cause. Thus, no hearing is required.

---

prepared by Agent Tucker, is not sworn and is not signed. Doc. 39-1. The reliability of the investigative report has not been challenged, but it could be subject to attack as insufficient evidentiary support for the *Franks* showing. *See id*. ("Arbolaez relies entirely upon the government's report of a statement by Perez's attorney that Perez denied having made the statements . . . . There is no affidavit or otherwise sworn statement alleging that Crispin knowingly or recklessly included false statements in the search warrant affidavit. Accordingly, we find that Arbolaez has failed to make the necessary 'substantial preliminary showing' and that there is no error."). However, the Court need not make that determination because, as discussed later in the Recommendation, even if this is enough for the first part, Defendant ultimately fails to carry his burden for the *Franks* showing.

### B.   Probable cause under the second part of the *Franks* analysis

Probable cause to support a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

> "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts[.]" [*Gates*, 462 U.S. at 232, 103]. To avoid "rigid" legal rules, *Gates* changed the "two-pronged test" of *Aguilar v. Texas*, [378 U.S. 108, 114] (1964), into a totality of the circumstances test. *See Gates*, 462 U.S. at 230–35 . . . . Under the *Gates* totality of the circumstances test, the "veracity" and "basis of knowledge" prongs of *Aguilar*, for assessing the usefulness of an informant's tips, are not independent. "[T]hey are better understood as relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for . . . by a strong showing as to the other[.]" *Id.* at 233[.]

*United States v. Brundidge*, 170 F.3d 1350, 1352–53 (11th Cir. 1999) (per curiam) (alterations in original). The "duty of a reviewing court is simply to ensure that the [judge] [based on the affidavit] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (alteration in original) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980)).

"When assessing whether the alleged false statements and omissions were material, the trial court is to disregard those portions of the affidavit which the defendant has shown are arguably false or misleading" and include the omitted facts to assess whether the edits would have prevented a probable cause finding. *Kapordelis*, 569 F.3d at 1309 (citing *Franks*, 438 U.S. at 171–72). Thus, the undersigned must omit the errant surveillance

9

information and add the Edwards 2023 investigation information. After doing so, the search warrant, in summary, would relay the following facts:

- An anonymous tipster made a drug complaint to law enforcement on February 6, 2025.

- The tipster reported drug activity at Defendant's home.

- ~~"Agents began conducting surveillance of the residence and observed several vehicles that drove up to the residence and would stay a short time and leave. This is consistent with narcotics transactions."~~

- **Law enforcement drove by the residence several times but did not observe any activity.**

- During surveillance, agents observed a vehicle drive up to the residence, stay a short period of time, and leave. Agents then conducted a traffic stop of the vehicle, during which they located approximately a quarter pound of marijuana.

- During surveillance of Defendant's home on April 3, 2025, law enforcement observed a black Chevrolet Malibu with tag ELMACEO parked at the residence with another vehicle. About 37 minutes later, the ELMACEO vehicle left the residence, and a traffic stop for a window tint violation was made. Due to the odor of marijuana, the vehicle was searched.

- The search revealed a backpack containing marijuana, marijuana behind the driver's seat pocket, and approximately 30 MCDs inside a door dash bag behind the passenger seat, and a firearm with an installed MCD under the passenger seat.

- **Maceo Edwards was known to law enforcement before April 3, 2025, and he was known to drive a black Malibu bearing the ELMACEO tag.**

- **Edwards had been under investigation related to MCDs for roughly two years—since 2023.**

- Following the ELMACEO traffic stop, agents responded back to Defendant's residence and they "cleared the residence for officer safety and observed a bag of marijuana lying on a bed in plain view in one of the bedrooms."

*See* Docs. 34-2; 39-1.

Revision of the surveillance statement to delete the drug activity observations and include the information relayed about the lack of activity during the initial surveillance as described in the investigation report, as well as editing the warrant to add the Maceo Edwards information, does not destroy probable cause. The affidavit as modified sets forth the drug activity complaint, which was the basis for the surveillance. While the affidavit does not set forth information about the complainant, it does set forth law enforcement's subsequent observations during surveillance, which tend to corroborate the complainant's report, including the traffic stop of a vehicle leaving the home which revealed approximately a quarter pound of marijuana, the traffic stop of the ELMACEO vehicle seen at and leaving Defendant's home resulting in discovery of marijuana and dozens of MCDs in Edwards's vehicle, including one already installed on a firearm, and the plain view observation of marijuana inside Defendant's home during the officer safety sweep.

The authorizing judge must have a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home in order for the warrant to supply probable cause. *Kapordelis*, 569 F.3d at 1310 (citing *United States v. Feliz*, 182 F.3d 82, 87–88 (1st Cir. 1999)). "There need not be an allegation that the illegal activity occurred at the location to be searched, for example the home, but 'the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity.'" *Id. (quoting United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)) (first citing *United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008)

11

(evidence of possession of contraband of type normally expected to be hidden in residence will support search); and then citing *United States v. Jenkins*, 901 F.2d 1075, 1080–81 (11th Cir.1990) (nexus between items to be seized and defendant's home can be established circumstantially where contraband is capable of being hidden in residence)). As the Eleventh Circuit has set out,

> Probable cause is "not a high bar." *District of Columbia v. Wesby*, [583 U.S. 48] (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 134 S. Ct. 1090, 1103, 188 L.Ed.2d 46 (2014)). The mere "probability or substantial chance of criminal activity" is all that is needed. *Id*. (quoting *Gates*, 462 U.S. at 243-44 n.13 . . . . This "flexible and fluid concept" turns on examining all information together. *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019).

*Hooks v. Brewer*, 818 F. App'x 923, 927 (11th Cir. 2020). Probable cause determinations "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 241 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

Certainly, this affidavit could have been better drafted. Indeed, the Government points to additional facts about the circumstances that would have further supported probable cause, but those facts were not included in the affidavit and therefore cannot support a probable cause determination.[5] Still, in view of the modified search warrant, the state court circuit judge would have received sufficient information in the affidavit

---

[5] The Government points out that the anonymous tip relayed concern not only about drug transactions at the residence but also about individuals with firearms at Defendant's home. Doc. 37 at 2. Additionally, the Government notes that the during the April 3 surveillance, officers "observed two black males exit the residence carrying something red and blue, enter the [ELMACEO vehicle], and drive away." Doc. 37 at 2. Further, the other traffic stop, which occurred while officers searched the ELMACEO vehicle and involved a driver Defendant says was his cousin, revealed marijuana and a firearm. *Id*. All of this information is also relayed in the investigative report (Doc. 39-1 at 1–3), but Defendant does not complain about its omission from the search warrant affidavit.

12

supporting fair probability that evidence of illegal activity could be found upon execution of a search at Defendant's home. *See United States v. Grubbs*, 547 U.S. 90, 95 (2006) ("Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" (quoting *Gates*, 462 U.S. at 238)). While the modified affidavit reveals a lack of activity during surveillance between the time of the February 6 anonymous tip and the April 3 surveillance—except for an undated stop where marijuana was found—the totality of the circumstances presents a fair probability that illegal narcotics and/or machinegun conversion device activity was occurring at the home. Specifically, when the tip is combined with the April 3 observations of the approximately 37-minute appearance of a person already suspected of criminal activity, Edwards, in conjunction with the discovery of drugs, approximately 30 MCDs,[6] and a converted firearm in the traffic stop of his vehicle immediately after leaving Defendant's residence, along with at least one other stop of a vehicle observed at and leaving the residence, which revealed approximately a quarter pound of marijuana in the vehicle, and the presence of marijuana in plain view inside Defendant's residence probable cause is established. As relayed in the modified affidavit, every vehicle stopped leaving Defendant's residence was found to conceal contraband—drugs and a significant quantity of MCDs. Under these circumstances, probable cause existed for the warrant on the face of the affidavit even when modified under *Franks*. *See Kapordelis*, 569 F.3d at 1309–10 ("As there is no dispute that

---

[6] Approximately 30 MCDs is a significant quantity, but according to law enforcement, the final count revealed 52 MCDs in the door dash bag. Doc. 13 at 8:15–21; *see also* Doc. 37 at 3. The final count was not included in the search warrant affidavit.

the magistrate judge undertook the evaluation prescribed by *Franks* and considered the affidavit with the omissions and additions proposed by Defendant, the Court is not persuaded that the trial court erred in declining to hold a *Franks* hearing."); *United States v. Gamory*, 635 F.3d 480, 490 (11th Cir. 2011) ("If . . . probable cause still exists once the false statement is removed from the warrant, there is no need to hold a *Franks* hearing. . . . The defendant bears the burden of showing that, 'absent those misrepresentations or omissions, probable cause would have been lacking.'" (quoting *United States v. Novaton*, 271 F.3d 968, 987 (11th Cir. 2001)); *United States v. Pendleton*, 447 F. App'x 978, 982 (11th Cir. 2011) ("Assuming arguendo that [affiant] did act with reckless disregard for the truth, the affidavit [with the false information excised] continued to contain statements concerning drug transactions at the residence the warrant targeted. Because these statements were sufficient to establish probable cause that documents relating to drug transactions would be found at that residence, we conclude that the district court did not err by denying the motion to suppress.").

Accordingly, Defendant has not demonstrated a basis for a *Franks* hearing, and the warrant is supported by probable cause and cannot form the basis for the suppression of evidence.

## IV. CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant's Motion to Suppress (Docs. 33, 34) be DENIED.
It is further

ORDERED that on or before **September 12, 2025**, the parties may file objections

to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see also Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 29th day of August, 2025.

/s/ Kelly Fitzgerald Pate  
KELLY FITZGERALD PATE  
UNITED STATES MAGISTRATE JUDGE